The STATE of Ohio, Appellee,

v.

BATTEE, Appellant.

[Cite as *State v. Battee* (1991), 72 Ohio App.3d 660.]

Court of Appeals of Ohio,
Trumbull County.

No. 90–T–4341.

Decided Feb. 25, 1991.

*Dennis Watkins*, Prosecuting Attorney, *Barbara G. Rosman*, Assistant Prosecuting Attorney, for appellee.

*Charles A. Ziegler*, Ohio Public Defender's Office, for appellant.

JOSEPH E. MAHONEY, Judge.

Defendant-appellant, Frank Battee, Jr., was charged and convicted of aggravated trafficking in drugs, a violation of R.C. 2925.03(A)(1), with a specification attached regarding a prior felony conviction. The charge resulted from appellant selling a small amount of cocaine to an undercover police officer, Charles List, on September 15, 1988.

Appellant filed a pretrial motion seeking to suppress all evidence regarding the identification of appellant by Officer List on the ground that the pretrial identification evidence sought to be introduced by the state was unduly suggestive and in violation of appellant's right to due process of law.

The trial court denied appellant's motion to suppress, and the matter was tried to a jury, which found appellant guilty as charged.

Appellant has timely appealed his conviction and the denial of his motion to suppress and now brings this sole assignment of error for our review:

"The trial court committed reversible error in failing to suppress the suggestive pretrial identification of appellant in violation of appellant's right to due process of law."

On October 20, 1989, the trial court held a suppression hearing on appellant's motion. On December 4, 1989, the trial court filed its findings of fact and conclusions of law wherein it denied appellant's motion. Based on the evidence presented at the hearing, the trial court made the following findings of fact:

"1) Officer Charles List of the Warren City Police Department testified that on September 15, 1988 at approximately 1900 hours, while wired with an audio intelligence device, he made a crack cocaine purchase from Frank Battee in the parking lot at 155 Highland Avenue, S.W. and that following this purchase, he and Frank Battee rode in his truck to another location on Carl Street to purchase additional cocaine. The testimony further revealed that after dropping Mr. Battee off on Carl Street, Officer List went to a safe-house to turn in the alleged cocaine to Lt. Stewart and Lt. Mandopoulos and then returned to the Warren Police Department for a de-briefing. The amount of time that elapsed between the time that Officer List dropped off Mr. Battee and the time he returned to the Warren Police Department was minute. Officer List described Mr. Battee as a black male approximately six feet in height, with his hair in a pony tail [sic] and wearing a cap at the time of the transaction. Officer List identified the person sitting at the defense table next to the Public Defender, as the person that he purchased cocaine from on September 15, 1988. Officer List then testified on his return to the police station that a picture had been shown to him by Lt. Stewart of the Defendant and that he had positively identified this picture as that of the man who had sold him cocaine earlier in the day. This picture was that of one FRANK BATTEE. The State introduced this picture into evidence, and showed it to Officer List who verified that this was the picture that he been [sic] shown on September 15, 1988, and that this was a picture of FRANK BATTEE. Officer list [sic] affirmed that his identification resulted from an independent recollection.

"2) Lt. Thomas Stewart of the Warren City Police Department testified that on September 15, 1988, he and Lt. John Mandopoulos, had monitored the transction [sic] between Officer List and Mr. Battee. Lt. Stewart testified that he recognized the voice of Mr. Battee from previous dealings with him. He further testified that on returning to the Warren City Police Department, he went to the files, retrieved a picture of Mr. Battee, which he showed to Officer List and a positive identification was made."

In addition to the foregoing facts, our review of the suppression hearing record reveals that Lt. Stewart testified he heard the confidential informant ("CI"), who was with Officer List, transmit, "This is Frank Battee." Lt. Stewart stated that he would have been able to identify the appellant's voice without the CI's statement. Lt. Stewart also testified that he observed the appellant prior to the transaction. However, Lt. Stewart retrieved the photograph of appellant based on his recognition of appellant's voice when it was transmitted over the audio intelligence device.

Appellant argues that showing Officer List a single photograph of appellant instead of a photographic lineup was highly suggestive, totally unnecessary, and gave rise to a "very substantial likelihood of irreparable misidentification." *Simmons v. United States* (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1255.

We agree that showing Officer List only one photograph was both suggestive and unnecessary, and we note that such practice has been widely condemned, *Stovall v. Denno* (1967), 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206, and is not encouraged by this court.

However, the United States Supreme Court has set the focus on the reliability of the identification and not the identification procedure. In *Neil v. Biggers* (1972), 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411, the court adopted a totality of the circumstances test for determining whether the identification was reliable and, therefore, admissible, even though the identification procedure was suggestive. The court set forth five factors to be considered in determining the likelihood of misidentification. These factors include:

" * * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. * * *" *Id.*

See, also, *State v. Madison* (1980), 64 Ohio St.2d 322, 331, 18 O.O.3d 491, 497, 415 N.E.2d 272, 277–278; *State v. Broom* (1988), 40 Ohio St.3d 277, 284, 533 N.E.2d 682, 691–692; *State v. Fry* (Aug. 24, 1990), Lake App. No. 89–L–

14–109, unreported, 1990 WL 124650; *State v. Johnson* (Feb. 16, 1990), Trumbull App. Nos. 4013, 3975, unreported, 1990 WL 13114; *State v. Buggs* (Aug. 26, 1988), Trumbull App. No. 3844, unreported, 1988 WL 89610; *State v. Constant* (Apr. 22, 1988), Lake App. No. 12–082, unreported, 1988 WL 38828; *State v. Clark* (June 28, 1983), Lake App. No. 9–149, unreported, 1983 WL 6173.

In *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154, the court stressed that " * * * reliability is the linchpin in determining the admissibility of identification testimony * * *" and re-affirmed the factors set forth in *Biggers, supra,* applying them to a photographic identification similar to the one *sub judice.*

*Manson v. Brathwaite, supra,* is factually analogous to the case before us. In *Brathwaite,* after making a drug buy, an undercover officer gave a description of the narcotics vendor who sold him drugs to another police officer who then obtained a photograph of the accused and left it at the undercover officer's office. Two days after the photograph was left at his office, the undercover officer identified the photograph as being that of the narcotics vendor. The court held that, while the pretrial identification was obtained by a suggestive and unnecessary police identification procedure, under the totality of the circumstances and the factors set out in *Biggers,* the undercover officer's identification was sufficiently reliable to be admitted into evidence.

Applying the factors of *Biggers,* the court found that the police officer had sufficient opportunity to directly view the suspect; was trained to pay scrupulous attention to details, knowing that his observations would be later scrutinized at trial; gave an accurate, detailed description of the vendor's clothing, race, and physical features minutes after the crime; positively and with certainty identified the photograph as that of the vendor; and the identification occurred only two days after the crime. Against these factors, the court weighed the corrupting effect of the suggestive identification and concluded that there did not exist a "very substantial likelihood of misidentification." *Id.* at 116, 97 S.Ct. at 2254, 53 L.Ed.2d at 155.

Applying the *Biggers* test to the case *sub judice,* under the totality of the circumstances, it is clear that, although the identification was suggestive, it was reliable and did not give rise to a substantial likelihood of misidentification.

First, Officer List had an excellent opportunity to view the suspect at the time of the crime. Officer List was able to get a full-face view of the suspect as he came to the passenger's side of his vehicle when they were first introduced and when appellant came back to the vehicle to verify the officer's identity. Officer List also viewed the appellant on the driver's side of the

vehicle and also when appellant rode in the officer's vehicle as a passenger on the way to make another drug purchase. The viewing occurred in early fall on September 15 at 7:00 p.m. while it was still light outside.

Second, like the undercover police officer in *Brathwaite,* Officer List was a trained and experienced officer who could be expected to pay scrupulous attention to detail, knowing that his observations would possibly be scrutinized in court.

Third, Officer List described appellant's race and clothing initially. Later, at the suppression hearing, he was able to independently describe appellant's height, and hair style, and that he was wearing a cap at the time of the transaction.

Fourth, Officer List positively and immediately identified the appellant from the photograph shown to him by Lt. Stewart.

Fifth, the identification occurred within ten to twenty minutes of the transaction.

Thus, considering the foregoing totality of the circumstances, the photographic identification was reliable and admissible. Therefore, the trial court properly denied appellant's motion to suppress.

Appellant's assignment of error is without merit.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and COX, J., concur.

EDWARD A. COX, J., of the Seventh Appellate District, sitting by assignment.