[Cite as *State v. Conner*, 2014-Ohio-4669.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 99557

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANTHONY CONNER

DEFENDANT-APPELLANT

---

## JUDGMENT:
## APPLICATION DENIED

---

Cuyahoga County Court of Common Pleas
Case No. CR-12-566159-A
Application for Reopening
Motion No. 475043

**RELEASE DATE:** October 22, 2014

**FOR APPELLANT**

Anthony Conner, pro se
#634-718
Lorain Correctional Institution
2075 S. Avon Belden Ave.
Grafton, OH 44044


**ATTORNEYS FOR RESPONDENT**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Jesse W. Canonico
Daniel T. Van
Assistant County Prosecutors
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} On May 21, 2014, the applicant, Anthony Conner, pursuant to App.R. 26(B) and *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992), applied to reopen this court's judgment in *State v. Conner,* 8th Dist. Cuyahoga No. 99557, 2014-Ohio-601, in which this court affirmed Conner's convictions and sentences for aggravated murder, murder, felonious assault, discharge of a firearm on or near a prohibited premises, and having a weapon while under disability. On June 25, 2014, Conner filed a supplement to his application, and on July 28, 2014, the state filed its brief in opposition. Conner argues that his appellate counsel was ineffective because he did not argue (1) that the trial court erred in failing to suppress a suggestive pretrial identification, and (2) that the prosecutor used perjured evidence and an improper argument to secure the conviction. For the following reasons, this court denies the application.

{¶2} In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 660 N.E.2d 456 (1996).

{¶3} In *Strickland,* the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that

a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶4} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 672 N.E.2d 638 (1996).

{¶5} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability

that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

{¶6} In the present case in the early morning of August 20, 2012, a fight broke out at the Sirrah House, a night club, and the club ordered everyone out. The fight continued in the parking lot. Police officers responding to the altercation saw Conner in a red-plaid, long-sleeve shirt shooting a black and silver .45-caliber handgun. When the officers chased Conner, he dipped down among the cars and then emerged. The officers caught and arrested him some distance from the nightclub, but he was without a firearm. Subsequently, the police found a black and silver .45-caliber handgun near the location where Conner had dipped down.

{¶7} During the fight in the parking lot, several people were injured, and Damon Woodard was shot to death. The medical examination recovered a morgue pellet from Woodard that had been fired from the black and silver .45-caliber handgun.

{¶8} Marquis Hollowell identified Conner as the shooter while Conner was in a police car in the parking lot. Subsequently, during a police investigatory interview, a detective showed Hollowell a single photograph of Conner, and Hollowell reaffirmed his identification of Conner as the shooter. However, at trial, Hollowell testified that he could not remember anything from that night. The trial court allowed the state to play the entire video recording of the detective's interview with Hollowell, including his

identification of Conner from the single photograph, to impeach or to refresh his memory.

Nevertheless, Hollowell insisted that he could not remember anything. Thus, Hollowell never identified Conner as the shooter for purposes of trial evidence. Conner's trial counsel moved for a mistrial because of the prejudicial nature of video recording. The trial judge denied the motion and instructed the jury that "[t]he videotaped interview of Marquis Hollowell is not to be considered as substantive evidence but only for impeachment purposes." (Tr. 1531.)

{¶9} In his first argument, Conner submits that his appellate counsel should have argued that the trial court erred in failing to suppress this suggestive pretrial identification. Conner argues that showing a witness a single photograph is highly suggestive and creates a very substantial likelihood of misidentification. *State v. Battee,* 72 Ohio App.3d 660, 595 N.E.2d 977 (11th Dist.1991). He further notes that the single photograph procedure is counter to the eyewitness identification procedures specified in R.C. 2933.83.

{¶10} This argument is not well-founded. First, the trial judge need not have suppressed this "identification" because it was not offered as substantive evidence but for purposes of impeachment or refreshing memory. This court further notes that neither *Battee* nor R.C. 2933.83 prohibit other means of identification, if the totality of the circumstances indicate that the identification was reliable.

{¶11} Moreover, appellate counsel continued the trial strategy that playing Hollowell's interview was grounds for a mistrial. In this, he made the playing of the

recording part of a larger argument that the admission of other acts evidence and prosecutorial misconduct demanded a mistrial. Appellate counsel emphasized in this assignment of error that playing the recording was prejudicial to Conner and denied him his right to confrontation and to a fair trial. Appellate counsel focused on the interview in the second assignment of error that the trial court erred in allowing Hollowell to testify[1] and in allowing the state to play the recorded interview. Appellate counsel argued that the interview was improperly proffered for impeachment purposes because there was nothing to impeach. Hollowell's lack of memory did not contradict his earlier statements; he just could not remember them. Furthermore, allowing the jury to hear Hollowell identify Conner as the shooter was material and irreparable prejudice. Following the admonitions of the United States Supreme Court, this court will not second-guess appellate counsel's strategy and tactics in seeking to obtain a reversal based on the playing of the video recording.

{¶12} Finally, Conner has not established prejudice. In its opinion, this court repeatedly noted there was overwhelming evidence that Conner killed Woodard. Specifically, in regard to the playing of the interview, this court stated that the trial court instructed the jury not to consider the recording as substantive evidence, but only for impeachment purposes. "We have no basis to find that the jury did not follow the court's instructions, especially in light of all of the evidence outlined previously in our

---

[1] Defense trial counsel questioned Hollowell's competency to testify because he had been declared incompetent to stand trial and because he said that he could not remember anything about the incident.

opinion." *Conner,* 8th Dist. Cuyahoga No. 99557, 2014-Ohio-601, ¶ 73. The court indicated that with the curative instruction the interview did not play a causal role in the conviction. Suppressing the interview ab initio would not have changed the result of the trial.

{¶13} Conner's second argument is that appellate counsel should have argued prosecutorial misconduct in proffering perjured testimony and improperly characterizing some of the witnesses as "lying felons" during closing argument. Conner endeavors to characterize inconsistencies in Deandre Stephens's testimony as perjured evidence.[2] The prosecutor called Stephens as a witness, and when Stephens seemed evasive in answering, the judge granted the prosecutor's motion to treat him as a hostile witness. Conner first focuses on an exchange in which the prosecutor asked Stephens whether Conner had almost run over him when everybody was running around the parking lot. The prosecutor apparently was seeking an answer consistent with Stephens's interview with the detective that Conner probably could have run him over. Instead, Stephens testified there were so many people running into each other and bumping into each other that Conner probably could have almost run him over, but Stephens did not know if Conner had done that and that he did not see Conner in the parking lot. Next, the prosecutor asked Stephens if he knew whether Conner had a gun that night. Stephens said, "No." The prosecutor then tried to impeach him with the interview with the

---

[2] Stephens and Conner were friends. They came to Sirrah House together in Stephens's girlfriend's car.

detective in which Stephens said "No. I do not know." It is difficult to discern how these inconsistencies amount to perjury, much less how this testimony prejudiced Conner. It is understandable how appellate counsel in the exercise of professional judgment could decide not to argue this point. Finally, appellate counsel did argue prosecutorial misconduct in characterizing some of the witnesses as "lying felons." Thus, Conner's argument is unpersuasive.

{¶14} Accordingly, this court denies the application to reopen.


TIM McCORMACK, JUDGE

EILEEN A. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR