[Cite as *State v. Burton*, 2020-Ohio-375.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107054 |
| v. | : | |
| JERMAEL BURTON, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** APPLICATION DENIED
**RELEASED AND JOURNALIZED:** January 31, 2020

Cuyahoga County Court of Common Pleas
Case No. CR-17-620576-A
Application for Reopening
Motion No. 531662

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jennifer M. Meyer, Assistant Prosecuting Attorney, *for appellee.*

Jermael Burton, *pro se.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} On September 5, 2019, the applicant, Jermael Burton, pursuant to App.R. 26(B), applied to reopen this court's judgment in *State v. Burton,* 8th Dist. Cuyahoga No. 107054, 2019-Ohio-2431, *appeal not accepted*, 157 Ohio St.3d 1408,

2019-Ohio-3731, 131 N.E.3d 83, in which this court affirmed his convictions for drug trafficking, possession of criminal tools, and having weapons while under disability. Burton now argues that his appellate counsel was ineffective by not arguing directly the impropriety of the search warrant, rather than through the lens of ineffective assistance of trial counsel. The state of Ohio filed its brief in opposition on October 7, 2019. For the following reasons, this court denies the application to reopen.

{¶ 2} Dontaurus Kemp testified that on August 12, 2017, he accompanied a friend to a three-story house to "chill" with some women. When they arrived at the house, they began knocking on the second-floor door to an apartment. Kemp further stated that Burton emerged from a doorway, probably the one across the hall that led to the third floor, and shot him. Kemp ran from the house and with the help of a stranger flagged down a police officer, who helped take him to a hospital. Kemp described the house to the officer and told him what happened.

{¶ 3} Another officer began investigating at the house and talked to Burton, who informed the officer that no shooting had taken place. This officer said that Burton admitted living at the house; the officer's body-camera footage confirmed that Burton said multiple times that he lived there. This officer further testified that when he sought to examine the third floor for any more victims or evidence of the shooting, Burton refused entrance and locked the door.

{¶ 4} Accordingly, the police officers obtained a search warrant. The detective who drafted the warrant swore "the victim advised the uniform officers

that he was at [the house] attempting to purchase drugs. Victim stated that he was in the upstairs hallway knocking on his drug dealer's door when he opened the door and shot him." (Pg. 2. Affidavit for search warrant.) Upon executing the search warrant, the police found cocaine, large amounts of methamphetamine and marijuana, an AR-15, a pistol, ammunition, tools for preparing drugs, and several pieces of correspondence addressed to Burton.

{¶ 5} At trial, residents of the house testified that they did not hear a gunshot. The detective admitted that what he swore to in the affidavit was not well-founded. Burton testified and denied shooting Kemp and denied living at the house. The jury found Burton not guilty of attempted murder and two counts of felonious assault, but guilty of three counts of drug trafficking, one count of possessing criminal tools, and two counts of having a weapon while under disability. The trial judge sentenced him to a total of 11 years.

{¶ 6} Burton's appellate counsel first argued that his trial counsel was ineffective for failing to move to suppress the fruits of the search warrant.[1] The foundation of the argument is that the statement that Kemp went to the house to obtain drugs was false. Furthermore, the detective must have acted in reckless disregard of the truth because he discussed the case with one of the investigating officers and because under the collective knowledge principle, the group's knowledge of a fact may be considered by the court. These factors would have led to

---

[1] Appellate counsel also argued that there was insufficient evidence to support the verdicts and that the verdicts were against the manifest weight of the evidence.

a hearing in which the court would have struck the supporting affidavit and suppressed the drugs, tools, and weapons. Appellate counsel bolstered this assignment of error by arguing that trial counsel failed to investigate Kemp's statements and the body-camera footage. These investigations would have impressed defense counsel with the need to move for a suppression hearing.

{¶ 7} This court rejected the assignments of error and affirmed the convictions. In overruling the first assignment of error, on ineffective assistance of trial counsel for failing to move to suppress, this court noted that moving to suppress the search warrant would have contradicted Burton's trial strategy that because he did not live in the house, he could not be guilty of charges. In order to have standing to raise the suppression issue, he would have had to admit he lived in or occupied the house. As this court stated: "Because counsel did not file a motion to suppress, which would necessarily be predicated on an expectation of privacy in the premises, Burton retained the ability to deny on the witness stand that he did not stay or live in the attic, refuting the state's claim he came from the attic apartment and shot Kemp." 2019-Ohio-2431, ¶ 66. This court also noted the speculative nature of this argument: Whether there was enough evidence that the detective made the statement in reckless disregard of the truth to compel the trial court to hold a hearing and then to convince the trial court that the false statement was made with sufficient scienter to suppress the fruits of the search. Now Burton argues that his appellate counsel was ineffective for framing this issue indirectly through the lens of ineffective assistance of trial counsel.

**{¶ 8}** In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that the counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.

**{¶ 9}** In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

**{¶ 10}** Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752, 103

S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.

{¶ 11} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies. *State v. White*, 8th Dist. Cuyahoga No. 104224, 2017-Ohio-8056, ¶ 11.

{¶ 12} In the present case, appellate counsel did argue the search warrant issue, analyzing the issue fully in an eight-page discourse. In framing the issue as one of ineffective assistance of trial counsel, he was also able to bolster the argument with a claim that trial counsel failed to investigate the victim and the police body-camera footage. Following the Supreme Court's admonitions to give deference to counsel's professional judgments in deciding strategy and tactics, this court will not second-guess appellate counsel's decision on framing the issues. *State v. Conner,*

8th Dist. Cuyahoga No. 99557, 2014-Ohio-4669, and *State v. Barrow,* 8th Dist. Cuyahoga No. 101356, 2015-Ohio-4579.

{¶ 13} Accordingly, this court denies the application.

_____
MICHELLE J. SHEEHAN, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
RAYMOND C. HEADEN, J., CONCUR